Betty L. ROE, Appellant (Defendant),

v.

Robert H. ROE, Appellee (Plaintiff).

No. 87–107.

Supreme Court of Wyoming.

Sept. 11, 1987.

Steven M. Avery, Riverton, for appellant.

Richard Kraemer, Riverton, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

Post-divorce conflict in contractual interpretation of the property-settlement agreement incorporated in the decree engenders this appeal. We reverse and remand.

Betty Roe brought into the marriage property in Pavillion, Wyoming, which was subject to a mortgage and, at the time of the divorce, was considered in the agreement of September, 1981:

"The parties acknowledge that part of the property described in Exhibit 'A' as becoming the sole and exclusive property of BETTY is subject to an indebtedness and mortgage presently held by the Riverton State Bank, Riverton, Wyoming, which loan is loan no. 01–040–2450–8 and has a present remaining unpaid principal balance of $38,265.40 and which loan is payable in monthly installments of $779.50 per month. In this regard, ROBERT agrees that he shall pay or cause to be paid to BETTY monthly, the sum of $250.00, which sum represents ROBERT'S share of said indebtedness and which monthly payments shall continue during the term of said loan under its present existing condition. Provided, however, that ROBERT may, if he so desires, at any time from and after the

date hereof, prepay his portion of said indebtedness, which prepayment shall be calculated at a rate equal to 32% of the unpaid principal balance of said note at any time during the life thereof, based on the presumption that all payments on said indebtedness have been made by BETTY timely as and when same become due and owing. ROBERT does hereby indemnify and agree to hold BETTY harmless from that portion of the above referenced indebtedness owed to Riverton State Bank, Riverton, Wyoming, which ROBERT does hereby assume and agree to pay, said indemnification and hold harmless to include reasonable attorney's fees and court costs, if any should be so incurred by BETTY."

Robert Roe made the payments until June, 1986, when Betty could no longer keep the property; she then sold the property, with consequent mortgage-obligation discharge by deduction from sale proceeds. Robert discontinued payments, contending that his obligation ended with the satisfaction of mortgage from sales proceeds. The trial court agreed with him, but this court will not, and will reverse the denial order and remand for effectuation of his agreement payment obligation in accord with stated terms.

We will accord to this written agreement a meaning clearly defined in terms used. The Pavillion property asset given to Betty was subject to a mortgage for which the husband was to pay $250.00 of the total monthly payment of $779.50, or approximately 32 percent. Since the wife was forced to sell in 1986, and not only paid her share, which was 68 percent of the balance then remaining, but his share also, the payment obligation of the husband remains effectuated in his agreement to hold her harmless for 32 percent of $24,931.90, or $7,978.21, with interest accruing according to the assumed indebtedness at 16 percent,[1]

prepayable in full, or payable in monthly installments of $250.00 per month. Presently accrued are payments due from July, 1986 to this date, of $250.00 monthly.

In applying common sense and good faith, *Marathon Oil Company v. Kleppe*, 407 F.Supp. 1301 (D.Wyo.1975), aff'd 556 F.2d 982 (10th Cir.1977), and as a decision to be made as a matter of law, we attribute to the agreement the obligations and rights mutually undertaken by the participants. This case is similar to *Nelson v. Nelson*, 740 P.2d 939 (1987), and the same rules of construction apply. *Busch Development, Inc. v. City of Cheyenne*, Wyo., 645 P.2d 65 (1982); *Sunburst Exploration, Inc. v. Jensen*, Wyo., 635 P.2d 822 (1981); *Cave Construction, Inc., v. United States for Use and Benefit of Angell Bros., Inc.*, 387 F.2d 760 (10th Cir.1967). Prepayment by one agreement participant does not vacate payment obligation of the other participant by condition-subsequent application. Intent of the parties, to be determined from the agreement made, controls whether or not a condition-subsequent exists. *Frank v. Stratford-Handcock*, 13 Wyo. 37, 77 P. 134 (1904). Appellee's theory for nonpayment of his agreed obligation is novel, but unpersuasive. There is nothing in the agreement that fairly shows an intent that his assumed debt was either subject to her retention of the property or dischargeable by her prepayment of the entire debt to clear title for whatever purpose required. The fact that she might prepay did not accelerate his monthly installment payment limitation of the total agreed debt. The amount to be paid was determined as 32 percent of the divorce-time property indebtedness which was in an established dollar amount. Provisions relative to the mortgage in agreement language determined the schedule and method of payment. However, those agreement provisions did

1. The mathematics of accumulating interest is awesome, particularly so when the rate is 16 percent. In 1981, at divorce date, the 32 percent total obligation of the husband equaled $12,244, and thereafter he apparently paid about $14,250 for mortgage-debt application, and still owed $7,978 by June, 1986, when he discontinued payment. In addition to the accruing-interest obligation since June, 1986, appellant apparently having not elected to accelerate thus far, Robert Roe is also faced with the last clause of the hold-harmless clause of the agreement, "said indemnification and hold harmless to include reasonable attorney's fees and court costs, if any should be incurred by BETTY."

not independently create a further condition, upon occurrence, which would extinguish the agreed debt. Robert had a right to prepay, but not an opportunity to be excused. *Nelson v. Nelson,* supra.

Reversed and remanded.