#27721-a-JMK

**2016 S.D. 96**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DEBRA R. TECH COFFEY,                    Plaintiff and Appellee,

    v.

MICHAEL F. COFFEY,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
MCCOOK COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TIMOTHY W. BJORKMAN
Judge

* * * *

TRESSA ZAHRBOCK KOOL of
Lockwood & Zahrbock Kool Law Office
Sioux Falls, South Dakota                    Attorneys for plaintiff
    and appellee.


MICHAEL E. UNKE
Salem, South Dakota                    Attorney for defendant
    and appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 29, 2016

OPINION FILED **12/21/16**

#27721

KERN, Justice

[¶1.]     Debra R. Tech Coffey sought a divorce from Michael F. Coffey.  They entered into a stipulation and agreement (Agreement) to resolve all issues and divide their property and debt.  Paragraph 2 of the Agreement awarded the marital home to Michael, divided responsibility for the two mortgages on the home, and declared that should the home be sold, the proceeds from the sale would first be used to pay off any sum remaining on the mortgages.

[¶2.]     Michael sold the home in April 2015 and used the proceeds of the sale to pay off both mortgages.  He requested reimbursement from Debra for the mortgage debt assigned to her.  She refused to reimburse him.  Michael filed a motion for an order to show cause, asking the circuit court to hold Debra in contempt and enter a judgment against her for the amount he paid on her mortgage plus interest.  The circuit court denied his motion.  Michael appeals.  We affirm.

## BACKGROUND

[¶3.]     Michael and Debra married on February 14, 1987.  On February 18, 2010, they entered into the Agreement, which divided their property and debt.  Debra's counsel drafted the Agreement.  This case concerns the first two sections of Paragraph 2 of the Agreement:

> Defendant shall be awarded the marital residence . . . .  The Plaintiff will be responsible for the 1st mortgage at Bank of America and shall have the length of the loan to either pay it off or refinance it.  Plaintiff will save and hold harmless the Defendant from any liability on said mortgage.  Defendant will be responsible for the second at Service First Credit Union and shall have the length of the loan to either pay it off or refinance it.  Defendant will save and hold harmless the Plaintiff from any liability on said mortgage.  Defendant agrees to be responsible for the taxes and insurance on said property.

> If Defendant would sell the home prior to the 1st or 2nd mortgage being paid in full, then upon sale of the home these mortgages will be paid in full first out of the proceeds of the home.

On February 23, 2010, the circuit court signed a judgment and decree of divorce, which incorporated the Agreement.

[¶4.]        On April 10, 2015, Michael sold the home and used the proceeds from the sale to extinguish both mortgages.  He immediately sought reimbursement from Debra for the $56,040.35 he paid to satisfy the remaining balance on the first mortgage.  Debra refused to pay him.

[¶5.]        On August 17, 2015, Michael filed a motion for an order to show cause, seeking to have Debra held in contempt.  He requested judgment against Debra in the amount of $56,040.35 plus prejudgment interest accrued from the date of sale and attorney's fees.  In November 2015, with the parties' consent, the court held a hearing on the interpretation of the contract but did not address the contempt portion of the motion because notice was inadequate.  The court told the parties if it determined the contract was ambiguous, it would hold a hearing to take evidence of the parties' intent and on the issue of contempt.  On December 28, 2015, the court issued a memorandum decision and order denying Michael's motion.  The court held: (1) the Agreement was unambiguous, and its plain meaning did not require Debra to reimburse Michael; (2) reimbursement would constitute an improper modification of the property division; and (3) because Debra had no duty to reimburse Michael, she was not in contempt.  Michael appeals.

[¶6.]        We restate Michael's issues as follows:

1. Whether the circuit court erred in its interpretation of the Agreement as unambiguous and not requiring reimbursement.

2. Whether the circuit court erred in holding that an order for reimbursement would constitute an impermissible modification of a final property settlement.

3. Whether the circuit court erred in denying Michael's motion for an order to show cause.

## STANDARD OF REVIEW

[¶7.] We review a circuit court's findings of fact under the clearly erroneous standard, while conclusions of law are reviewed de novo. *Hamilton v. Sommers*, 2014 S.D. 76, ¶ 17, 855 N.W.2d 855, 861. Contract interpretation is a question of law reviewed de novo. *Lillibridge v. Meade Sch. Dist. #46-1*, 2008 S.D. 17, ¶ 9, 746 N.W.2d 428, 431 (citing *Hanson v. Vermillion Sch. Dist. #13-1*, 2007 S.D. 9, ¶ 24, 727 N.W.2d 459, 467).

## ANALYSIS

1. Whether the circuit court erred in its interpretation of the Agreement as unambiguous and not requiring reimbursement.

[¶8.] "Divorce stipulations are governed by the rules of contract; their interpretation is a matter of law for the courts to decide." *Hisgen v. Hisgen*, 1996 S.D. 122, ¶ 4, 554 N.W.2d 494, 496. "[I]n determining the proper interpretation of a contract the court must seek to ascertain and give effect to the intention of the parties." *Id.* (quoting *Malcolm v. Malcolm*, 365 N.W.2d 863, 865 (S.D. 1985)). "In order to ascertain the terms and conditions of a contract, we must examine the contract as a whole and give words their 'plain and ordinary meaning.'" *Gloe v. Union Ins. Co.*, 2005 S.D. 30, ¶ 29, 694 N.W.2d 252, 260 (quoting *Elrod v. Gen. Cas. Co. of Wis.*, 1997 S.D. 90, ¶ 15, 566 N.W.2d 482, 486). Further, we do not

"interpret language 'in a manner that renders a portion of [the contract] meaningless.'" *Tri-City Assocs., L.P. v. Belmont, Inc.*, 2014 S.D. 23, ¶ 11, 845 N.W.2d 911, 915 (quoting *Estate of Fisher v. Fisher*, 2002 S.D. 62, ¶ 14, 645 N.W.2d 841, 846). "Instead, we interpret the contract to give 'a reasonable and effective meaning to all [its] terms.'" *Id.* (quoting *Casey Ranch Ltd. P'ship v. Casey*, 2009 S.D. 88, ¶ 11, 773 N.W.2d 816, 821).

[¶9.] "When the meaning of contractual language is plain and unambiguous, construction is not necessary. If a contract is found to be ambiguous the rules of construction apply." *Pesicka v. Pesicka*, 2000 S.D. 137, ¶ 6, 618 N.W.2d 725, 726. Ambiguity requires more than mere disagreement:

> A contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract. Rather, a contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.

*Dowling Family P'ship v. Midland Farms*, 2015 S.D. 50, ¶ 13, 865 N.W.2d 854, 860 (quoting *Pesicka*, 2000 S.D. 137, ¶ 10, 618 N.W.2d at 727). "This Court has said that '[a]mbiguities arising in a contract should be interpreted and construed against the scrivener.'" *Advanced Recycling Sys., LLC v. Se. Props. Ltd. P'ship*, 2010 S.D. 70, ¶ 19, 787 N.W.2d 778, 785 (quoting *Campion v. Parkview Apartments*, 1999 S.D. 10, ¶ 34, 588 N.W.2d 897, 904).

[¶10.] Both parties argue that the Agreement is unambiguous, but they reach markedly different conclusions as to its proper meaning. Debra submits the circuit court did not err in finding the Agreement unambiguous and not requiring reimbursement. Debra argues her obligation was contingent upon Michael

retaining ownership of the home. Michael, on the other hand, argues "the Agreement and exhibit 1 are not ambiguous when construed together." But Michael concludes that the plain language of the Agreement obligates Debra to reimburse him for his satisfaction of the first mortgage. In Michael's view, to hold otherwise would be inequitable and result in an ambiguity.

[¶11.] The alleged ambiguity arises from a document titled "Spread Sheet Asset – Liability" (Exhibit 1) that was attached to the Agreement. Michael claims Exhibit 1 was incorporated into the Agreement because it is referenced three times in the Agreement. Exhibit 1 is a spread sheet that lists Debra's and Michael's total assets and liabilities from their property settlement. It provides for an equalizing payment by Debra to Michael in the amount of $3,383. This payment is required by Paragraph 30 of the Agreement. Because Exhibit 1 lists the first mortgage as a liability assignable to Debra that was used to equalize the division of property, Michael now submits that Debra must reimburse him for the amount he paid from the sale proceeds to satisfy the first mortgage. Michael argues that if Paragraph 2 is interpreted to extinguish part of Debra's total liabilities, the division of property is unequal. Such a resolution, Michael contends, results in a direct ambiguity within the Agreement as to Debra's net assets: $230,825 under Exhibit 1 or $174,785 (the net assets in Exhibit 1 less the $56,040.35 used to pay off the first mortgage) under the terms of Paragraph 2. To avoid such an ambiguity, Michael advances his view that the Agreement is unambiguous and requires Debra to immediately reimburse him for his payment of the first mortgage. In the

alternative, both parties request remand to the circuit court for an evidentiary hearing on the parties' intent should this Court find the Agreement ambiguous.

[¶12.]　　　　We agree with the circuit court that the Agreement is unambiguous, and its plain meaning does not require Debra to reimburse Michael. Paragraph 2 states: "The Plaintiff [Debra] will be responsible for the 1st mortgage at Bank of America and shall have the length of the loan to either pay it off or refinance it." It also requires that Debra "will save and hold harmless the defendant [Michael] from any liability on said mortgage." This language contemplates that Debra will be solely responsible for the first mortgage and would prevent Michael from incurring any liability for nonpayment of the mortgage. There are, however, two provisions in this opening paragraph that contextualize Debra's obligation. First, it begins: "Defendant shall be awarded the marital residence located at 25037 444 Ave in Salem, South Dakota." Second, the paragraph ends: "Defendant agrees to be responsible for the taxes and insurance on said property." Debra's obligation to save and hold Michael harmless from liability for the first mortgage is embedded between statements granting Michael possession of the home and requiring him to pay standard expenses for the home. Thus, the duty to hold Michael harmless on the first mortgage is moored to Michael's continued possession of the home. Further, Paragraph 2 gives Debra a specific timeframe to pay off or refinance the loan (i.e., "the length of the loan"). Although Debra does have a duty to shield Michael from liability for the first mortgage, that duty was created as part of the arrangement awarding Michael possession of the home.

[¶13.]     The duty to shield Michael from liability on the first mortgage is modified by a conditional provision in Paragraph 2. The provision states: "If the Defendant would sell the home prior to the 1st or 2nd mortgage being paid in full then upon the sell [sic] of the home these mortgages will be paid in full *first* out of the proceeds of the home." (Emphasis added.) The use of "first" removes this language from the realm of possible ambiguity. "First"[1] indicates a demarcation of priority; it divides the universe of payment methods into different sets. The Agreement plainly requires the mortgages to be paid *first* from the proceeds from the sale of the home.

[¶14.]     A contract is not ambiguous because it fails to explicitly cover all possible situations upon the occurrence of a conditional provision. Rather, "a contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Pesicka*, 2000 S.D. 137, ¶ 10, 618 N.W.2d at 727 (quoting *Singpiel v. Morris*, 1998 S.D. 86, ¶ 16, 582 N.W.2d 715, 719). The Agreement requires proceeds from the sale of the home to be used first to pay off any remaining mortgages on the home. It is necessary to draw upon other funds for repayment only *after* proceeds from the sale of the home are used.[2] Paragraph 2

---

1.     The American Heritage College Dictionary offers two common meanings of "first" that are relevant here: "2. The one coming, occurring, or ranking before or above all others. 3. The beginning; the outset; *at first*." *American Heritage College Dictionary* 513 (3rd ed. 1997).

2.     The circuit court cited two cases from other jurisdictions for the proposition that the plain meaning of a provision in a contract is controlling. *See Roe v. Roe*, 742 P.2d 203 (Wyo. 1987); *Walker v. Pfeiffer*, No. 1872-99-2, 2000 WL

(continued . . .)

sets forth an arrangement that allowed Michael to live in the home and required Debra to pay the first mortgage while holding Michael harmless from liability for the same. Michael had the right to sell the home, but his decision altered this arrangement.

[¶15.] Equally important as the use of the word "first" is the absence of a reimbursement provision. The "save and hold harmless" clause does not operate to require reimbursement. Rather, Debra's obligation to save and hold Michael harmless from the first mortgage was the status quo at the time of the initial division of property. The conditional language altered Debra's obligation but only because Michael chose to sell the home before the first mortgage was paid off. This provision alters the earlier obligations, not the other way around.

[¶16.] Additionally, reading the Agreement to require reimbursement even after the conditional provision was triggered would render the language superfluous. We must interpret the Agreement to give "a reasonable and effective meaning to all [its] terms[.]" *Casey*, 2009 S.D. 88, ¶ 11, 773 N.W.2d at 821 (quoting *In re Dissolution of Midnight Star Enters., L.P. ex rel. Midnight Star Enters., Ltd.*, 2006 S.D. 98, ¶ 12, 724 N.W.2d 334, 337). If the Agreement required reimbursement because Debra's duty to save and hold harmless was not altered by the conditional provision, the language would merely force Michael to use proceeds from the sale of the home instead of other personal funds to pay off the mortgages.

---

(. . . continued)
    34617836 (Va. Ct. App. July 11, 2000). Although neither case is directly on point, they are persuasive for the proposition that a court must interpret the plain meaning of the contract before it.

This reading strains credulity. A reading of the language of the Agreement that gives effect to all the terms of the Agreement is that upon effectuating the conditional provision, Michael was first required to use the proceeds from the sale of the home to extinguish the first mortgage. Michael was not required to sell the home but chose to do so, and the Agreement required the proceeds of the home to first be used to pay off the mortgages, leaving nothing for which Debra was liable.[3]

---

3.      Contrary to the dissent's assertion, we have not "add[ed] two unwritten 'conditions'" to the Agreement. *Infra* ¶ 26. The first "unwritten condition" the dissent discusses is that "Debra's hold-harmless obligation was first conditioned on Michael's 'continued possession of the home.'" *Id.* The dissent, however, mischaracterizes our language in ¶ 12 of this opinion. To interpret the Agreement, "we must examine the contract as a whole." *Gloe*, 2005 S.D. 30, ¶ 29, 694 N.W.2d at 260. The first section of Paragraph 2, as explained by ¶ 12 of this opinion, creates a baseline of duties and rights associated with the two mortgages and possession of the home. The next section of Paragraph 2, which contains the conditional provision, creates an exception to the duties and rights spelled out in the first section *upon the sale of the home*. Read together, these two sections in Paragraph 2 of the Agreement reveal that the conditional provision in section two modifies the duties and rights set forth in section one of Paragraph 2.

The second alleged "unwritten condition" is that "Debra's obligation to pay the mortgage debt was 'modified by [a] conditional provision' in the home-sale clause that discharged her obligation if Michael sold the home." *Infra* ¶ 26. We have not *added* this "condition" but rather given effect to the plain meaning of the Agreement. The second section of Paragraph 2 uses conditional language: *if* Michael sold the home before either mortgage debt was paid off, *then* those mortgages will be paid first from the proceeds of the sale. This language is a conditional statement because it sets forth a *condition* (i.e., selling the home), which triggers subsequent obligations. The parties chose to use the words "if" and "then" in a paragraph *immediately following* a paragraph that set forth rights and duties. The only reasonable interpretation of the language in Paragraph 2 is that the if–then statement modifies the parties' previously stated rights and duties. While conditions in contracts should be strictly construed, we cannot ignore the meaning of the words "if" and "then."

[¶17.]   One of the necessary linchpins of Michael's argument is the assertion that Exhibit 1 is incorporated into the Agreement, which he contends gives rise to an ambiguity. Although Defendant claims that "[m]ost courts would consider [Exhibit 1] as part of the contract," he cites no South Dakota case law for this proposition. Instead, Michael cites a 1954 federal-district-court decision from California that refers to a flexible process of incorporation by reference.[4] This Court has not adopted a test for the incorporation of other documents into a contract and declines to do so in this case as it is not necessary to resolve the issue presented.[5]

---

4.   *See United States v. Outer Harbor Dock & Wharf Co.*, 124 F. Supp. 337, 343 (S.D. Cal. 1954) ("It is the law of contracts of California that a contract may refer to another contract for details or conditions. When this is done, the contracts referred to must be considered as a part of the contract in which the reference is made. And it is not necessary that language be used incorporating them into the second contract or that they be attached to it.").

5.   In a civil case based on diversity jurisdiction, the United States District Court for the District of South Dakota, citing the United States Court of Appeals for the Eighth Circuit, held that "[a] contract 'may incorporate another document if the terms of the incorporated document are known or easily available to the contracting parties.'" *Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, 891 F. Supp. 2d 1088, 1099 (D.S.D. 2012) (quoting *Halbach v. Great-West Life & Annuity Ins. Co.*, 561 F.3d 872, 876 (8th Cir. 2009). The district court relied upon the reasoning of the Supreme Court of Michigan for the following principle:

> Although neither physical attachment nor specific language is necessary to incorporate a document by reference, the incorporating instrument must clearly evidence an intent that the writing be made part of the contract. When the question of whether another paper or term has been incorporated by reference depends on the 'exercise of speculation, surmise and conjecture' the court will refuse to rewrite the contract.

*Id.* (quoting *Forge v. Smith*, 580 N.W.2d, 876, 882 n.21 (Mich. 1998)).

-10-

[¶18.]     Even if we were to adopt such a test and find Exhibit 1 incorporated into the Agreement, it would not change the analysis.[6] This is because we find significant the Agreement's lack of a reimbursement provision or other related language. In the first section of Paragraph 2, Debra is given the life of the loan to extinguish or refinance the mortgage debt. The agreement is silent as to the details of any dollar amount or terms of reimbursement for Michael for proceeds from the sale of the home used to pay off the first mortgage. We cannot add terms to the language of the Agreement but rather "are bound by the words chosen by the parties." *Pesicka*, 2000 S.D. 137, ¶ 12, 618 N.W.2d at 727. It is true that Exhibit 1 provides an itemized list and proposed valuations of the parties' assets and liabilities as described in the Agreement and as such, evinces the parties' rights and obligations at the time the Agreement was entered into. But "we must examine the contract as a whole[.]" *Gloe*, 2005 S.D. 30, ¶ 29, 694 N.W.2d at 260. The conditional

---

6.     The dissent alleges the Agreement is ambiguous because it does not address the "question of ultimate liability." *Infra* ¶ 24. Regarding the ultimate liability, there is no ambiguity because the conditional language does not eliminate the save-and-hold-harmless clauses. If the proceeds from the sale of the home were insufficient to extinguish Debra's obligation on the first mortgage, then it would still be her duty to save and hold Michael harmless from that debt. Thus, the only way an ambiguity is reached on the ultimate-liability issue is by reading the provisions as mutually exclusive. Nothing in the Agreement suggests that the second section wipes out the rights and duties spelled out in the first section. Rather, the second section's conditional language modifies the first section's rights and duties in a specific instance and for a specific purpose. Accordingly, there is no need for the Agreement to spell out what "was to come second," as the dissent argues. *Infra* ¶ 24 (emphasis omitted). Hence, the Agreement is not ambiguous.

language altered[7] the parties' obligations when Michael sold the home. Debra is not required to reimburse Michael because the Agreement is clear in what it demands and conspicuous in what it does not.

        2.     Whether the circuit court erred in holding that an order for reimbursement would constitute an impermissible modification of a final property settlement.

[¶19.]      The circuit court did not err in holding that Michael's request for reimbursement would constitute an impermissible modification of a final property settlement. "The long-standing law of this State is 'that the division of property pursuant to a divorce decree is not subject to modification.'" *Hiller v. Hiller*, 2015 S.D. 58, ¶ 12, 866 N.W.2d 536, 541 (quoting *Sjomeling v. Sjomeling*, 472 N.W.2d 487, 489 (S.D. 1991)). The Agreement divided the parties' property pursuant to the divorce decree, and as such, it is not subject to modification unless indeterminate language is used in the Agreement. *See Hisgen*, 1996 S.D. 122, ¶ 9, 554 N.W.2d at 497 ("While a property division is irrevocably fixed by the terms of the divorce decree and cannot be later modified, if indeterminate language was employed, a court may clarify its decree . . . ."). But the language of Paragraph 2 is

---

7.    The dissent contends that our opinion is "not supported by the language of the agreement." *Infra* ¶ 26. But our reading is fully supported by the text of the Agreement. The use of conditional language creates a foreseeable future that may not come to pass. Michael did not have to sell the home, but after five years, he chose to do so. This decision triggered the conditional provision, which had the effect of modifying the parties' rights and duties as spelled out by the Agreement and as detailed in Exhibit 1. The dissent's reading would invalidate the use of conditional language in this contract. We are bound by the words the parties chose, and they explicitly set forth a conditional provision that Michael could trigger, thereby altering the property settlement.

determinate, setting forth the specific manner in which the first mortgage should be resolved without reference to reimbursement to Michael. Five years after execution of the Agreement, Michael chose to set the conditions of repayment in motion by selling the home, and we will not relieve him of the consequences of his decision or rewrite the parties' Agreement.

> 3. Whether the circuit court erred in denying Michael's motion for an order to show cause.

[¶20.] The circuit court did not err by denying Michael's motion for an order to show cause seeking to hold Debra in contempt for failing to reimburse him. "The purpose of the civil contempt proceeding is to force a party 'to comply with orders and decrees issued by a court in a civil action for the benefit of an opposing party.'" *Sazama v. State ex rel. Muilenberg*, 2007 S.D. 17, ¶ 23, 729 N.W.2d 335, 344 (quoting *Wold Family Farms, Inc. v. Heartland Organic Foods, Inc.*, 2003 S.D. 45, ¶ 14, 661 N.W.2d 719, 723). The four elements of contempt are: "(1) existence of an order, (2) knowledge of that order, (3) ability to comply with the order, and (4) willful or contumacious disobedience." *Talbert v. Talbert*, 290 N.W.2d 862, 864 (S.D. 1980). Debra cannot be held in contempt because she did not engage in willful or contumacious disobedience of the order dividing marital property. Debra was not required to reimburse Michael after the proceeds from the sale of the home were used to pay off the first mortgage. Thus, the circuit court did not err in denying Michael's motion for an order to show cause.

## CONCLUSION

[¶21.] The circuit court did not err by finding the Agreement was unambiguous. Nor did it err in its interpretation of the Agreement. The plain

language of the Agreement does not require Debra to reimburse Michael. And the circuit court correctly determined that Michael's request for an order requiring repayment from Debra would result in an impermissible modification of a final property settlement. Accordingly, the circuit court did not err when it denied Michael's motion for an order to show cause. We affirm.

[¶22.] GILBERTSON, Chief Justice, and SEVERSON and WILBUR, Justices, concur.

[¶23.] ZINTER, Justice, dissents.


ZINTER, Justice (dissenting).

[¶24.] The circuit court's judgment incorporated the divorcing parties' property-settlement agreement that provided for an equal division of their net worth. Under the agreement, Michael was awarded the home and Debra was obligated to pay the first-mortgage debt. A hold-harmless clause provided that Debra was to "save and hold [Michael] harmless" for "any liability" on that debt. She was also given the entire length of the mortgage to pay the debt. However, a separate home-sale clause provided that if Michael sold the home before the mortgage was satisfied, the mortgage was to "first" be satisfied from the sale proceeds. The dispute in this case arose because although the separate home-sale clause provided that the parties were to *first* use sale proceeds to satisfy the mortgage, the parties neglected to include language as to what was to come *second*. Because the agreement fails to address this question of ultimate liability for the mortgage, the agreement is ambiguous. Because the agreement is ambiguous, we

should, as the parties have requested, remand for an evidentiary hearing to determine the parties' intent.

[¶25.] The majority correctly states the law governing the interpretation of ambiguous agreements. However, the Court erroneously concludes that this agreement is "unambiguous" and that its "plain meaning" discharges Debra's obligation, making Michael ultimately liable for the mortgage debt. *See supra* ¶¶ 12-13. As is readily apparent, there is no transfer or discharge-of-liability language in the agreement. Further, considering Debra's contractual right to pay the debt over the entire length of the mortgage, the home-sale clause can be reasonably interpreted to simply enable a sale of the home by satisfying recorded mortgages without affecting Debra's ultimate liability for the mortgage debt. Because the agreement is subject to different, reasonable interpretations, it is ambiguous. *See Pankratz v. Hoff*, 2011 S.D. 69, ¶ 16, 806 N.W.2d 231, 237.

[¶26.] The Court determines that the contract unambiguously discharges Debra's obligation and transfers the mortgage liability to Michael only by adding two unwritten "conditions" to the agreement. According to the Court, Debra's hold-harmless obligation was first conditioned on Michael's "continued possession of the home." *Supra* ¶ 12 (asserting that Debra's obligation was "moored to Michael's continued possession" because it is "embedded between" a sentence providing "Defendant shall be awarded the marital residence" and a sentence providing "Defendant agrees to be responsible for the taxes and insurance on said property"). But those sentences contain no language tying those provisions to Debra's mortgage liability or the hold-harmless clause. They contain no language referencing—let

alone modifying—the hold-harmless clause. The Court also claims that Debra's obligation to pay the mortgage debt was "modified by [a] conditional provision" in the home-sale clause that discharged her obligation *if* Michael sold the home. *See supra* ¶¶ 13, 15. But the home-sale clause is in a different paragraph than the mortgage and hold-harmless clauses. Moreover, there is nothing in the language (requiring that the mortgages "be paid in full first out of the proceeds" if Michael sold the home) that purports to modify *ultimate liability* for the debt. Thus, the Court's claimed "conditions" are not supported by the language of the agreement.

[¶27.]     Conditions are not favored by law and must be construed strictly. *Weitzel v. Sioux Valley Heart Partners*, 2006 S.D. 45, ¶ 38, 714 N.W.2d 884, 895-96; *Point Dev., LLC v. Enter. Bank & Tr.*, 316 S.W.3d 543, 546-47 (Mo. Ct. App. 2010); 17A Am. Jur. 2d *Contracts* § 453, Westlaw (database updated Nov. 2016). "[A]n act or event designated in a contract will not be construed as a condition unless that clearly appears to be the intention of the parties." 17A Am. Jur. 2d *Contracts* § 443. "The document as a whole must be examined and it must be determined that the intent of the parties was to pre-agree that the happening or nonoccurrence of the stated event after the contract becomes binding would cause the" contractual obligation to terminate. *Weitzel*, 2006 S.D. 45, ¶ 38, 714 N.W.2d at 896.

[¶28.]     Here, the parties' intent is not clearly reflected in the agreement. The agreement included provisions for an award of the home, payment of taxes, liability for the first- and second-mortgage debt, and immediate satisfaction of the mortgages in the event of a sale. Although the home-sale clause provided for the immediate satisfaction of the mortgages "first out of the" sale proceeds, the

agreement never addresses ultimate liability.  The parties also failed to include express language either discharging Debra's responsibility for the mortgage or transferring that liability to Michael.  Without such language, the hold-harmless clause can be reasonably read to remain effective after the sale.  Rather than adding unwritten conditions to the agreement, we should hold that the agreement is ambiguous and remand for the circuit court to determine the parties' intent.