#29653-r-PJD
**2022 S.D. 13**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JULIE NIEMITALO,                                    Plaintiff and Appellant,

    v.

RICHARD SEIDEL,                                    Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
PERKINS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MICHELLE K. COMER
Judge

* * * *

MICHAEL C. LOOS
MICHAEL K. SABERS of
Clayborne, Loos & Sabers, LLP
Rapid City, South Dakota                    Attorneys for plaintiff and
                                            appellant.


STACY R. HEGGE of
Gunderson, Palmer, Nelson
   & Ashmore, LLP
Pierre, South Dakota

TIMOTHY J. BARNAUD
Belle Fourche, South Dakota                 Attorneys for defendant and
                                            appellee.

* * * *

ARGUED
JANUARY 12, 2022
OPINION FILED **03/02/22**

#29653

DEVANEY, Justice

[¶1.]     This appeal concerns whether Julie Niemitalo and Richard Seidel's divorce agreement released Julie's right to bring a civil suit against Richard for conduct that occurred while the parties were separated and in the process of obtaining a divorce.  The circuit court, on a motion for summary judgment by Richard, determined that the divorce agreement is unambiguous and interpreted it to be a broad release and full and final settlement of all claims.  The court therefore granted Richard summary judgment, concluding that Julie released her right to bring this civil suit against Richard.  Julie appeals, and we reverse and remand.

**Factual and Procedural Background**

[¶2.]     Julie and Richard had been married for 23 years when, in September 2017, she filed for divorce based on Richard's adultery.  In late 2018, Julie and Richard reached a settlement agreement and executed a "Property Distribution and Divorce Agreement" (Agreement).  The Agreement was incorporated into a judgment and decree of divorce filed on December 4, 2018.

[¶3.]     Julie filed the civil lawsuit at issue here in September 2019, alleging tort claims based on conduct that occurred while the divorce action was pending. She asserts that on November 2, 2017, Richard physically attacked her at Bison Grain, a company owned and operated by Julie and Richard, then bound her with zip ties, and drove her to their marital home where he raped her.  Richard was indicted on alternative counts of kidnapping, and one count each of rape, aggravated assault, and commission of a felony with a firearm based on these alleged events.  After a jury found him guilty of all four offenses in July 2019, he

-1-

was later sentenced to a total of 75 years in the penitentiary. Richard appealed, and in December 2020, this Court affirmed his convictions and sentence. *See State v. Seidel*, 2020 S.D. 73, 953 N.W.2d 301.

[¶4.]        In Julie's pending civil suit, she alleges claims for intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, and civil battery. In her prayer for relief, she seeks compensatory and punitive damages, past and future medical expenses, prejudgment interest, and reasonable attorney fees and costs. Richard has asserted as an affirmative defense that Julie's "claims are barred by release pursuant to the divorce judgment and settlement."

[¶5.]        In February 2021, Richard filed a motion for summary judgment in the civil suit, asserting that pursuant to the terms of the Agreement, Julie released all claims and causes of action against him that arose prior to the date she signed the Agreement. According to Richard, the Agreement constitutes a broad release because the parties "agree[d] to a full, complete and final property settlement of all the property of the parties" and that "Julie shall have no claim against any property of [Richard] either now hold [sic] or afterwards acquired." Richard also directed the circuit court to the absence of language in the Agreement indicating that Julie reserved her right to bring a civil suit against him.

[¶6.]        In response, Julie asserted that she was not required to specifically reserve her right to bring suit. She further claimed that no language in the Agreement supports that she in any way waived or released her right to bring a civil tort action against Richard because, in her view, the Agreement unambiguously pertains only to the property of the parties and "nothing more." She

alternatively alleged that if the Agreement were to be deemed ambiguous, her current counsel's trial testimony solicited by Richard at his criminal trial reflects that Richard and Julie did not intend for the Agreement to include a release by Julie of her right to bring this civil suit against Richard.

[¶7.]    After a hearing and in consideration of briefing, the circuit court granted Richard summary judgment.  The court determined that "the settlement agreement and subsequent divorce decree that dissolved the marriage between the parties is unambiguous in its statement that 'Julie shall have **no claim** against any property of the Defendant either now held or afterwards acquired . . . and that this Agreement shall be in **full and final settlement** of all the property rights of the parties.'"  (Emphasis added by the circuit court.)

[¶8.]    Julie filed a motion for reconsideration.  She directed the circuit court to testimony from the criminal trial in which Richard's counsel argued during closing argument that Julie retained her right to bring a civil suit against Richard and his further suggestion that she had a motive to lie in the criminal proceeding because she hoped a guilty verdict would support her later civil claims.  Julie asserted that this argument by counsel was a judicial admission on behalf of Richard that she had retained her right to bring suit, and further asserted that judicial estoppel would preclude Richard from now taking a contrary position.

[¶9.]    Julie additionally requested that the circuit court reconsider its ruling because, in her view, the court's interpretation of the Agreement created "a contract for the parties with implications that no party to the contract ever understood or expected."  She emphasized that the Agreement lacked any language releasing all

claims, demands, rights, obligations, etc. She also asserted that based on the plain language of the Agreement, the parties only released and settled their claims against each other's *property*, not claims against a *person*. Alternatively, Julie alleged that the Agreement could not release Richard of responsibility for his intentional conduct because SDCL 53-9-3 prohibits contracts that exempt anyone from responsibility for willful injury.

[¶10.] The circuit court held a hearing on Julie's motion and issued a letter decision reaffirming, but expanding on, the basis for its prior ruling. The circuit court noted that it had previously granted Richard summary judgment after finding the Agreement to be unambiguous. It then explained that "the [Agreement] is replete with language that this was a release[,]" including "but not limited to the provisions that [Julie] agrees to pay all of her medical bills for her treatment without reservation." The court also pointed to language in other provisions in the Agreement as evidence of a release of Julie's claims:

> Further, [Julie] received a lump sum nonmodifiable alimony amount of $750,000 "intended as a final adjustment of mutual rights and obligation[s] and is an absolute judgment." Next, there is language under the heading "ENTIRE AGREEMENT" that this "constitutes the sole, exclusive, and entire agreement between the parties . . . ." Under the heading MODIFICATION AND PERFORMANCE of the Agreement the language provides "each party acknowledges that this Agreement has been entered into of his or her own volition, with full knowledge of the facts and full information as to the legal rights and liabilities of each. Each party believes the Agreement to be reasonable under the circumstances."

Finally, the court noted that the Agreement did not contain a "reservation of any further claims." The court denied Julie's motion for reconsideration.

[¶11.]      Julie appeals, asserting that the circuit court erred in granting Richard summary judgment.

## Standard of Review

[¶12.]      "We review a summary judgment de novo." *Henning v. Avera McKennan Hosp.*, 2020 S.D. 34, ¶ 14, 945 N.W.2d 526, 530 (citation omitted). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c).  This Court similarly reviews the circuit court's interpretation of a divorce settlement agreement de novo. *See Hisgen v. Hisgen*, 1996 S.D. 122, ¶ 4, 554 N.W.2d 494, 496.

## Analysis and Decision

### *Contract Interpretation*

[¶13.]      Julie contends the circuit court erred in interpreting the Agreement to be a release of her right to bring a civil suit against Richard for his conduct toward her on November 2, 2017.  The plain language of the Agreement, she argues, establishes that the parties did not intend it to be a broad release and settlement of all claims against each other, but rather, intended it to be a final and full settlement of their property rights.  In her view, the circuit court rewrote the parties' Agreement to include a release of *tort claims*, when the Agreement unambiguously provides that Julie only released and settled claims against Richard's *property*.

[¶14.]     Richard contends that the circuit court properly interpreted the Agreement to be a broad release. He acknowledges that the Agreement refers to Julie having no claim against his "property." However, Richard asserts that by bringing suit to recover at least $10,000,000 in damages from him, "Julie is seeking [his] property for alleged events occurring prior to her [ ] signing the Agreement." Richard further claims that the Agreement bars Julie from bringing this civil suit because Julie agreed to accept a $750,000 nonmodifiable lump sum alimony award as a "final adjustment of mutual rights and obligation[s.]"

[¶15.]     Divorce agreements "are governed by the rules of contract[,]" and therefore, this Court "must seek to ascertain and give effect to the intention of the parties." *Hisgen*, 1996 S.D. 122, ¶ 4, 554 N.W.2d at 496 (citations omitted). In doing so, the Court examines the Agreement "as a whole and give[s] words their 'plain and ordinary meaning.'" *Coffey v. Coffey*, 2016 S.D. 96, ¶ 8, 888 N.W.2d 805, 809 (citation omitted). "When the meaning of contractual language is plain and unambiguous, construction is not necessary." *Id.* ¶ 9 (citation omitted). Rather, "it is the duty of this [C]ourt to declare and enforce" the intention of the parties as "clearly manifested" in the contract. *Pauley v. Simonson*, 2006 S.D. 73, ¶ 8, 720 N.W.2d 665, 668 (citation omitted). "However, if the contract 'is uncertain or ambiguous,' parol or extrinsic evidence may be used for clarification" and "to show what they meant by what they said[.]" *Id.* (citations omitted). Importantly, "[a] contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract." *Coffey*, 2016 S.D. 96, ¶ 9, 888 N.W.2d at 809 (citation omitted). Instead, ambiguity exists if a contract

"is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* (citation omitted).

[¶16.]		Here, the circuit court correctly determined that the Agreement is unambiguous as it pertains to whether Julie released her right to bring this civil suit against Richard.  However, an examination of the Agreement as a whole does not support the circuit court's interpretation that it constitutes a broad release and full and final settlement of all claims between the parties.  In the opening paragraph, the parties stated that they intended this "Property Distribution and Divorce Agreement" "to be an Agreement for a divorce and the division of all *property* owned by" them.  (Emphasis added.)  There is no language in this introductory paragraph, or elsewhere in the Agreement, indicating that the parties intended to settle and release any and all personal claims against each other.

[¶17.]		While the circuit court, in its initial order granting summary judgment, focused particularly on the language in the recital paragraph providing that the Agreement is a "full and final settlement[,]" that language immediately proceeds "of *all the property rights* of the parties."  (Emphasis added.)  Additional language in this recital paragraph also provides that the parties "agree to a full, complete and final property settlement of all the *property* of the parties[.]" (Emphasis added.)  This repeated use of the word "property" clearly indicates that the parties intended to fully and finally settle all *property* claims arising out of the marital relationship, but there is nothing in these provisions indicating the

Agreement was meant to resolve claims unrelated to the equitable division of the property in the divorce.

[¶18.]    Similarly, although the circuit court emphasized other language in the recital paragraph providing that Julie agreed to "have *no claim* against any property of the Defendant either now hold [sic] or afterwards acquired[,]" (emphasis added), the language "no claim" is directly connected to the *property* of Richard. Therefore, this language does not support that the parties intended for Julie to release all claims against Richard *personally*. Notably, Julie's civil suit against *Richard* seeks damages. It is not a suit claiming an interest in property. Richard's argument focuses on the satisfaction of a personal judgment against him for damages in the event Julie prevails in her civil suit, but the relevant question is whether the Agreement bars Julie from instituting this suit. In fact, none of the elements of the torts alleged by Julie (intentional and negligent infliction of emotional distress, false imprisonment, and civil battery) pertain to a claimed interest in Richard's property.[1]

[¶19.]    The circuit court, in its letter to counsel reaffirming summary judgment, pointed to additional language in the Agreement and indicated that the Agreement "is replete with language that this was a release." In particular, the court relied on the provision in the Agreement in which Julie agreed to pay all

---

1.    For example, a claim for intentional infliction of emotional distress requires a showing of "(1) extreme and outrageous conduct by the defendant; (2) that the defendant intended to cause severe emotional distress; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress must result." *Christians v. Christians*, 2001 S.D. 142, ¶ 23, 637 N.W.2d 377, 382 (citation omitted).

medical bills incurred for her treatment. In Richard's view, this provision supports the court's determination that Julie released her right to bring this civil suit in which she seeks, among other types of damages, reimbursement for her medical bills. On the contrary, regardless of whether this provision impacts one of Julie's requests for monetary relief (a contention that appears to be disputed by the parties), it does not impact Julie's right to institute the underlying action against Richard for his alleged assaultive conduct.

[¶20.] The court further noted language providing that Julie's receipt of a lump sum alimony award is "intended as a final adjustment of mutual rights and obligation[s] and is an absolute judgment." However, this language is contained under a separate provision in the Agreement entitled "Lump Sum Non-Modifiable Alimony[.]" In this context, this language does not indicate that the parties' intended the alimony award to serve as consideration for a release of all of Julie's tort claims against Richard, particularly those not raised or litigated in the divorce proceeding. Rather, it is standard language for describing the nonmodifiable nature of a lump sum alimony award. As the Court in *Holt v. Holt* explained,

> Obviously, the purpose of both the court and the parties, in providing for or in accepting a gross allowance of alimony, is to define and fix with finality the scope of the rights and the obligations of the parties. In this case, it was designed to set the limits of the wife's right to alimony, and we have no doubt that the husband would have cushioned himself on the doctrine of vested rights, if the wife had attempted to institute proceedings to increase the amount. Without discussing the matter further, it is our view that an unqualified allowance in gross, in a divorce decree, whether payable immediately in full or periodically in instalments, and whether intended solely as a property settlement or as an allowance for support, or both, is such a definite and final adjustment of mutual rights and obligations as to be capable of a present vesting and to constitute an absolute

judgment, and the court cannot subsequently modify the amount thereof.

84 S.D. 671, 674–75, 176 N.W.2d 51, 53 (1970) (citation omitted); *accord Oman v. Oman*, 2005 S.D. 88, ¶ 11, 702 N.W.2d 11, 15.

[¶21.] The circuit court also quoted the following language in the Agreement under the paragraph titled "Modification and Performance": "Each party acknowledges that this Agreement has been entered into of his or her own volition, with full knowledge of the facts and full information as to the legal rights and liabilities of each. Each party believes the Agreement to be reasonable under the circumstances." Further, the court noted language in the paragraph titled "Entire Agreement" that "this Property Distribution and Divorce Agreement constitutes the sole, exclusive and entire Agreement between the parties[.]" Aside from quoting the language of these provisions, neither the circuit court nor Richard identify in what manner this language effects a release of any and all *tort claims*. To the contrary, it is clear that these standard contract provisions, similar to the language under the alimony provision, relate only to the finality of "all of the terms of the contract between the parties." This language therefore pertains to the subjects addressed in the Agreement, e.g., alimony, the parties' property rights and debt obligations, and the grounds for divorce, but not matters unaddressed by the Agreement.

[¶22.] Nevertheless, Richard likens the circumstances here to those at issue in *Henry v. Henry*, wherein this Court held that the wife could not bring suit against her husband for pre-divorce conduct because she "waived that opportunity by signing a release in the parties' settlement agreement." *See* 534 N.W.2d 844, 847 (S.D. 1995). According to Richard, *Henry* is comparable because, like in *Henry*, the

conduct forming the basis of Julie's suit against him "occurred prior to the parties' execution of the Agreement."

[¶23.]     While Julie's suit is similarly based on pre-divorce conduct, the settlement agreement in *Henry* involved much broader language than that present in the Seidels' Agreement.  In particular, the *Henry* settlement agreement provided a release of "*any and all rights, claims*, demands or obligations arising out of or by virtue of the marital relation[.]"  *See id.* (emphasis added).  This Court concluded that based on "[a] clear reading" of the settlement agreement, the parties "were settling all pre-divorce claims."  *Id.*; *see also Flugge v. Flugge*, 2004 S.D. 76, ¶¶ 17–19, 681 N.W.2d 837, 842–43 (interpreting similar language—"complete and final settlement of all rights and claims that each may have against the other"—to be a broad release).

[¶24.]     Here, in contrast, a clear reading of the Seidels' Agreement as a whole shows that they intended to settle only their respective *property rights* rather than all pre-divorce *claims* they might have against each other.[2]  *See, e.g., Decker v.*

---

2.     Richard also relies on *Aggregate Construction v. Aaron Swan & Associates*, 2015 S.D. 79, 871 N.W.2d 508, as support for his argument that the language of the Agreement reflects a broad release of *all* claims that arose from events occurring prior to the divorce.  However, the language of the release in *Aggregate*, unlike the language in the Seidels' Agreement, was broad and expressly released all claims.  It provided a release of "any and all claims, demands, liabilities, obligations, damages, costs, expenses, loss of profits, loss of use, loss of services and consortium, actions and causes of action, including each and every right of payment for damages said undersigned may now or hereafter have, arising from any act, occurrence or omission up to the present time and particularly on account of all loss and damage of any kind heretofore sustained, presently existing, or that may hereafter be sustained or that may arise in consequence of incidents that occurred during construction season 2008–2009[.]"  *Id.* ¶ 10, 871 N.W.2d at 510–11.

*Rightnour*, 1992 WL 20657, * 2, No. CV 90 09 3351 (Ohio Ct. App. Feb. 5, 1992) (examining similar language—"the parties desire to settle their respective property rights"—and concluding that "[t]here is no indication within the agreement that it had any other purpose or subject matter than the division of property and debts pursuant to the termination of a marriage").

[¶25.]    However, Richard contends that because Julie did not expressly reserve her right, similar to the parties in *Richardson v. Richardson*, to bring a civil suit against Richard for his conduct on November 2, 2017, she could not bring suit against him seeking damages for such conduct. *See* 2017 S.D. 92, ¶ 6, 906 N.W.2d 369, 371 (noting that the parties' settlement agreement contained "an exception permitting either party to pursue nonproperty causes of action against the other"). While Richard is correct that there is no language in the Agreement expressly *reserving* Julie's right to bring suit, his argument misses the more persuasive counterpoint. Julie retained her right to bring suit because the language in this Agreement does not indicate that Julie *waived* or *released* that right. The circuit court therefore erred in interpreting the Agreement to be a broad release of Julie's right to bring a civil suit against Richard for his conduct on November 2, 2017.

***Res Judicata***

[¶26.]    Richard nevertheless contends that res judicata bars Julie from bringing this civil suit against him because, in his view, Julie's claims against him were "encompassed in the earlier divorce proceeding[.]" He directs this Court to language from a special writing in *Richardson*, in which Justice Severson recognized that "res judicata may bar a subsequently filed interspousal tort action

because an 'action for divorce and [a] tort claim both evolve from a common factual nucleus and raise interrelated economic issues that should be resolved in a single proceeding.'" 2017 S.D. 92, ¶ 36, 906 N.W.2d at 381–82 (Severson, J., concurring in result) (quoting Andrew Schepard, *Divorce, Interspousal Torts, and Res Judicata*, 24 Fam. L.Q. 127, 131 (1990)).

[¶27.]     In *Richardson*, Sally brought suit against her ex-husband, Michael, for intentional infliction of emotional distress based on conduct that occurred during their marriage. *Id.* ¶ 7, 906 N.W.2d at 371. Michael filed a motion to dismiss for failure to state a claim based on this Court's decision in *Pickering v. Pickering*, 434 N.W.2d 758 (S.D. 1989) barring a former spouse from bringing suit against the other spouse for intentional infliction of emotional distress when the conduct forming the basis of the cause of action led to the dissolution of the marriage. *Richardson*, 2017 S.D. 92, ¶ 7, 906 N.W.2d at 371. The circuit court in *Richardson* granted Michael's motion to dismiss, concluding that "*Pickering*, as a matter of public policy, prohibited 'causes of action predicated on conduct which leads to the dissolution of marriage, even if such conduct is severe.'" *Id.* ¶ 8, 906 N.W.2d at 372 (quoting *Pickering*, 434 N.W.2d at 761).

[¶28.]     On appeal, this Court overruled *Pickering*, in part because the decision "operates to obstruct justice and contravene the Legislature's determination that married persons have a substantive right to sue for redress and protection from harm." *Richardson*, 2017 S.D. 92, ¶ 15, 906 N.W.2d at 374. In the Court's view, "the right to sue for [intentional infliction of emotional distress] should not depend on when an ex-spouse filed for divorce." *Id.* ¶ 24, 906 N.W.2d at 377. Yet, under

*Pickering* "a person being abused by their spouse may sue for [intentional infliction of emotional distress], but only if they stay married to their abuser." *Id.* ¶ 21, 906 N.W.2d at 376.

[¶29.] Ultimately, the Court, in *Richardson*, reversed the circuit court's dismissal of Sally's suit against Michael and remanded for further proceedings. The Court noted that its decision left unanswered issues not before the Court, including "how joinder and principles of preclusion apply to tort claims brought after a divorce action" and matters related to attorney fees and the prevention of double recovery. *Id.* ¶ 30, 906 N.W.2d at 380–81. Justice Severson, in his concurrence, noted that the Court's decision "leaves many procedural and substantive legal issues unanswered because they are not properly before the Court in this case." *Id.* ¶ 37, 906 N.W.2d at 382 (Severson, J., concurring in result). He cautioned counsel to be aware that res judicata might foreclose litigation of an interspousal tort action when a spouse seeks "damages on the same misconduct that generated an alimony award." *Id.* ¶ 35, 906 N.W.2d at 381 (citation omitted).

[¶30.] Here, Justice Severson's admonition is not implicated. The Agreement provides that Julie obtained a divorce from Richard based on adultery, conduct that does not have a common factual nucleus to her interspousal tort action against Richard for intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, and civil battery. Further, nothing in the Agreement reflects that the parties raised, litigated, negotiated, or settled, in the divorce action, the impact of Richard's assaultive conduct against Julie that occurred after she filed for divorce. Finally, although Julie received a lump sum

alimony award, the language in the Agreement does not reflect that the award was intended to compensate her for Richard's tortious conduct.

[¶31.]     Because the language of the Agreement does not preclude Julie's civil tort suit against Richard and res judicata does not apply, the circuit court erred in granting Richard summary judgment.  As such, we need not address Julie's further arguments relating to the doctrines of judicial admission and judicial estoppel and the applicability of SDCL 53-9-3.

[¶32.]     Reversed and Remanded.

[¶33.]     JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.