#30166-r-PJD
**2024 S.D. 20**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF THE
ESTATE OF DENNIS G. SCHMELING,
Deceased.
\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT L. SPEARS
Judge

\* \* \* \*

DANIEL K. BRENDTRO
BENJAMIN M. HUMMEL of
Hovland, Rasmus, Brendtro
    & Trzynka, Prof. LLC
Sioux Falls, South Dakota

Attorneys for appellants Dallas
Schmeling, Ronald Schmeling,
and Russell Schmeling, Jr.


LEE SCHOENBECK
JOE ERICKSON of
Schoenbeck & Erickson, P.C.
Watertown, South Dakota

Attorneys for appellees Sharon
Schmeling, Scott Schmeling,
and John Schmeling.

\* \* \* \*

CONSIDERED ON BRIEFS
OCTOBER 3, 2023
OPINION FILED **04/10/24**

#30166

DEVANEY, Justice

[¶1.]    Two brothers and one nephew of the decedent filed a petition contesting the provisions in the decedent's will devising farmland to the decedent's sister-in-law.  The Estate moved for summary judgment, asserting that based on this Court's decision in *In re Estate of Tank*, 2020 S.D. 2, 938 N.W.2d 449, the contestants could not show that the devise was the result of undue influence.  The circuit court agreed, concluding that the record contained no evidence showing that the decedent had a testamentary disposition toward the contestants.  The court also determined that summary judgment was appropriate because the contestants did not present evidence showing that the sister-in-law participated in the drafting of the disputed will or engaged in acts of undue influence.  The contestants appeal, asserting the circuit court erred in granting summary judgment on grounds not briefed or argued to the court and erred in concluding that under *Tank* summary judgment was appropriate.  We reverse and remand.

### Factual and Procedural Background

[¶2.]    Dennis Schmeling, and his four brothers, Dallas, Ronald, Russell Sr., and Glenn, grew up on the Schmeling family homestead in Codington County, South Dakota.  At some point, their mother transferred ownership of the homestead to Dennis.  Dallas claimed that Dennis was not a very good farmer or good at breeding cattle and always had to rely on others to help him.  Glenn helped Dennis on the farm until Glenn passed away in 2010, after which Ronald and Dallas helped Dennis.

[¶3.]    Dennis never married and did not have any children. For some time, he lived with Glenn and his wife, Sharon, in a house Dennis owned in South Shore, South Dakota. Glenn and Sharon were allegedly taking care of Dennis while he was experiencing health issues. After Glenn passed away in 2010, Dennis moved to a home in Watertown, and Sharon and her son, John, moved out of the home in South Shore. Although Dennis maintained contact with Sharon and John over the years, Dallas claimed that Dennis had mixed feelings about them. For example, Dallas testified that Dennis told him the farm will never go to John and that he had heard people describe Sharon using unflattering terms.

[¶4.]    By June 2021, Dennis was in poor health and was scheduled to undergo surgery later in the month. On the Sunday before surgery, Dennis and Dallas both attended church in South Shore. Dallas testified that during a conversation after church, Dennis told him that this is "probably the last time I walked out of the church alive[.]" Dallas claimed that he reassured Dennis, but he also testified that this comment provoked a further conversation. Dallas asked Dennis whether he had prepared a will, and Dennis replied that he had but then said it was "probably not like I wanted it." Dallas claimed that Dennis was crying during this discussion.

[¶5.]    Dennis underwent surgery on June 15, 2021, and on June 25, he died after experiencing complications from the surgery. At the time of his death, he owned three quarters of farmland in Codington County, the homes in Watertown and South Shore, and personal property such as machinery and livestock. His

closest surviving relatives included brothers Dallas and Ronald and nephews Russell Jr. (son of deceased Russell Sr.) and John (son of deceased Glenn).

[¶6.] Dennis executed two known wills during his lifetime—a 2002 Will and a 2021 Will. The 2002 Will named Glenn's son, John, as the sole beneficiary of Dennis's estate and devised to him all personal, real, and mixed property. This Will did not specifically devise any property to Dennis's brothers or to his nephew Russell Jr. and did not contain a residuary clause. Dennis nominated Glenn to be the personal representative, and if Glenn failed to or could not act, then he nominated Sharon to be the personal representative.

[¶7.] Dennis executed the 2021 Will on June 10, 2021, shortly before his death. This Will revoked all previous wills and appointed Sharon to be the personal representative. Similar to the 2002 Will, Dennis did not specifically devise any of his property to his then-living brothers or to Russell Jr. However, unlike the 2002 Will, Dennis devised 160 acres of the farmland to John, 160 acres to Sharon, and a one-half interest in another 160 acres to Sharon with the other one-half interest to John. The 2021 Will also devised the house in Watertown to his long-time friend Patricia and his house in South Shore to Sharon.[1] Dennis did not include a provision devising his personal property in this Will. He also did not include a residuary clause, but in one provision, he directed that if there is not "anyone who is, or might become entitled to receive benefits from [his] estate as provided [in the specific bequests,]" then the portion of his "estate then remaining shall be paid over and distributed outright to [his] heirs-at-law" as though he had died intestate.

---

1. At the time of his death, Dennis was living in the Watertown home with Patricia.

[¶8.]        On July 20, 2021, Sharon commenced an informal probate of Dennis's 2021 Will and was appointed to be the personal representative. In September 2021, Dallas, Ronald, and Russell Jr. (the Contestants) filed a petition challenging the validity of the 2021 Will, claiming that it was the result of undue influence or, in the alternative, that Dennis lacked testamentary capacity. The Contestants also sought appointment of a new personal representative. After learning of the existence of the 2002 Will, they amended their petition to challenge only those portions of the 2021 Will devising property to Sharon on the basis that the devises were the product of undue influence by Sharon. Although they again requested the appointment of a new personal representative, they did not assert their alternative claim that Dennis lacked testamentary capacity.

[¶9.]        In regard to the Contestants' challenge to portions of the 2021 Will devising property to Sharon, the Estate filed a motion for summary judgment. In its brief in support, the Estate identified the four elements the Contestants must prove for their undue influence claim:

> (1) the decedent's susceptibility to undue influence; (2) an opportunity to exert such influence and effect the wrongful purpose; (3) a disposition to do so for an improper purpose; and, (4) a result clearly showing the effects of undue influence.

*Tank*, 2020 S.D. 2, ¶ 33, 938 N.W.2d at 459 (quoting *Stockwell v. Stockwell*, 2010 S.D. 79, ¶ 35, 790 N.W.2d 52, 64). The Estate asserted that summary judgment is warranted because the Contestants cannot prove element four "based upon the controlling authority of the *Estate of Russell O. Tank*, 2020 S.D. 2, 938 N.W.2d 449." In particular, the Estate characterized this fourth element as a "causation element" and argued that the Contestant cannot establish "that Dennis Schmeling

disinherited them because of alleged undue influence by Sharon" when, just as this Court noted in *Tank*, there was "no evidence to show that [the decedent] had any testamentary disposition toward [three of his children], even in the absence of any alleged undue influence," here, "Dennis Schmeling disinherited all three of the [Contestants] as early as 2002" by not leaving any property to them in the 2002 or 2021 Wills. The Estate also argued that because John was the only one that stood to inherit the farmland under the 2002 Will, John is the only one who can claim that the 2021 Will is the result of Sharon's undue influence. The Estate then noted that John is not disputing the validity of the 2021 Will.

[¶10.] Prior to responding to the Estate's summary judgment motion, the Contestants filed a motion for partial summary judgment, seeking the following rulings from the circuit court: (1) that Dennis did not disinherit them in either Will; (2) that he expressly included them in his 2021 Will as heirs-at-law that would inherit under certain circumstances; (3) that as heirs-at-law, they and John, would inherit the residue of Dennis's estate; and (4) that Dennis had a testamentary disposition toward them at the time he made the 2021 Will. The Estate opposed the motion, asserting that "the Contestants would need to show that the decedent had some interest in leaving a testamentary disposition to them of his farm." It further argued that based on the 2002 and 2021 Wills, "the decedent had no interest in making a testamentary disposition to the Contestants of his farmland[,]" and thus, "[i]t doesn't matter whether or not they were disinherited." The Estate also submitted, with its response, Dallas's deposition testimony to support what it deemed to be "additional undisputed material facts" to support these assertions.

[¶11.] In their brief opposing the Estate's motion for summary judgment, the Contestants argued that *Tank* is distinguishable because the three wills at issue in *Tank* all contained a provision expressly disinheriting three of the decedent's children who were contesting his most recent will, and here, Dennis's 2002 and 2021 Wills did not expressly disinherit them. Just as they noted in their brief in support of their motion for partial summary judgment, the Contestants argued that Dennis's 2021 Will, by its terms, evinced a testamentary disposition toward them, unlike the wills in *Tank*.

[¶12.] The circuit court held a hearing on the parties' respective motions for summary judgment wherein the parties reiterated the arguments made in their written submissions. Thereafter, the court issued a memorandum decision. When characterizing the grounds upon which the parties' sought summary judgment, the court incorrectly stated that the Contestants had filed a motion for summary judgment on the allegations in their petition and amended petition that Sharon was involved in the drafting of the 2021 Will and exerted undue influence on Dennis. The court later more accurately referred to the limited basis asserted in the Contestants' partial summary judgment motion—"that the decedent did not disinherit [them] and that the decedent had a testamentary disposition toward them."

[¶13.] In a similar fashion, when characterizing the Estate's motion for summary judgment, the court stated, incorrectly, that the Estate's motion alleged that "there are no facts presented on this record to support the allegations that Sharon was involved in the drafting of the second Will, that she exerted undue

influence[.]" However, the court then stated, more accurately, that the Estate's motion alleged "that there are no facts that support the allegation that the decedent had any desire to bequeath any of the farmland to the contestants."

[¶14.]    Ultimately, the circuit court denied the Contestants' motion for partial summary judgment and granted the Estate's motion. Citing *Tank*, the court stated that there was no evidence showing that Dennis had a testamentary disposition toward the Contestants. The court also determined that there were no facts in the record supporting that Sharon was involved in the drafting of the 2021 Will or that she engaged in any acts that would constitute undue influence.

[¶15.]    The Contestants filed a written objection to the circuit court's decision granting the Estate summary judgment, asserting that the issues before the court on summary judgment concerned only "testamentary disposition/causation." The Contestants thus argued that the court "procedurally erred to the extent that it granted summary judgment on matters outside the 'causation' issues raised in the briefing." In support of their objection, the Contestants attached as exhibits the written discovery exchanged between the parties identifying specific witnesses and the information they could provide to support the other elements of the Contestants' undue influence claim. The court did not rule on this objection because on the same day the Contestants filed their written objection, they filed a notice of appeal to this Court challenging the court's summary judgment order.

[¶16.]    On appeal, the Contestants assert that the circuit court erred by granting summary judgment on grounds not raised by the parties and further erred

by granting the Estate's motion for summary judgment and denying their motion for partial summary judgment.

## Standard of Review

[¶17.] "We review de novo a circuit court's decision to grant or deny summary judgment." *Hoven v. Banner Associates, Inc.*, 2023 S.D. 33, ¶ 19, 993 N.W.2d 562, 568. "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Niemitalo v. Seidel*, 2022 S.D. 13, ¶ 12, 972 N.W.2d 115, 119 (quoting SDCL 15-6-56(c)).

## Analysis and Decision

### Whether the circuit court erred by granting the Estate's motion for summary judgment on grounds not raised by the parties.

[¶18.] The Contestants argue that the parties' motions for summary judgment raised the narrow question whether the Contestants would be able to prove the fourth element of their undue influence claim. The Contestants direct this Court to the parties' filings submitted to the circuit court and the Estate's statements of undisputed material facts. According to the Contestants, these filings refer solely to the Contestants' inability to prove the fourth element of undue influence relating to causation based on the Estate's view that the circumstances here are akin to those at issue in *Tank*. The Contestants further note that their own motion for partial summary judgment advanced the inverse argument—that

this case is unlike *Tank* because Dennis did not disinherit them and the 2021 Will shows Dennis had a testamentary disposition toward them.

[¶19.]     The Estate does not argue in response that it sought summary judgment on any basis other than the one identified by the Contestants.  Rather, it notes that its "motion for summary judgment focused on the holding from *Estate of Tank*, 2020 S.D. 2, ¶ 47, 938 N.W.2d 449, 462."  After listing all of the elements of an undue influence claim, the Estate agrees that "[t]he fourth element is at issue on this appeal[.]"  Nevertheless, the Estate contends that reversible error did not occur because "the Contestants did not develop or protect their record[,]" and according to the Estate, the record supports the circuit court's ruling.  The Estate notes that this Court can affirm the summary judgment decision if any basis in the record exists to do so.

[¶20.]     In *Leonhardt v. Leonhardt*, this Court noted that while the circuit court "is not confined to the particular propositions of law advanced by the parties on a motion for summary judgment[,]" there is a risk that "the party opposing the summary judgment motion may be able to show that a genuine issue exists but has not done so because the facts relating to the particular legal principles were not in issue."  2012 S.D. 71, ¶ 12, 822 N.W.2d 714, 717 (quoting *Jaste v. Gailfus*, 679 N.W.2d 257, 261 (N.D. 2004)).  In response to this risk, the Court stated that the circuit court should notify the parties of its intent to address issues not briefed or argued by the moving party to "ensure[ ] that the parties have a meaningful opportunity to develop the record and present all relevant evidence to the court."  *Id.* (citing *Heisler v. Metro. Council*, 339 F.3d 622, 631 (8th Cir. 2003) ("It is

fundamentally unfair to the nonmoving party to require her to address issues not addressed by the moving party in anticipation that the district court might rely on some unidentified issue to grant the motion.")).

[¶21.]	Here, a review of the parties' written and oral arguments to the circuit court reveals that the only issue briefed and argued below is whether the Contestants would be able to prove the fourth element of their undue influence claim, namely, that the devises leaving portions of the farmland to Sharon in the 2021 Will were the result of undue influence. The court seemed to recognize the limited issue before it during the summary judgment hearing based on a colloquy with counsel for the Contestants. During this exchange, counsel for the Contestants advised the court that in deciding their motion for partial summary judgment there was no need to consider Dallas's deposition testimony, but rather, the court need only look at the wills and the relevant probate statutes to determine whether Dennis disinherited the Contestants or had a testamentary disposition toward them. The court then asked counsel for the Contestants whether they were "alleging that the 2021 will was the product of undue influence[,]" but qualified its question by stating, "I'm not asking that to put you guys on the spot now but now I want to make sure I understand your comment when you said I don't have to read or reread a deposition."

[¶22.]	Then, in response to counsel's request that the court clarify its question, the court asked, "[I]s there any issue on [sic] the contestants that this will was the result of undue influence?" Counsel for the Contestants replied, "So for purposes of *this motion* that's not something" that needs to be decided. (Emphasis

added.)  The court then stated, "That's not properly before me."  Counsel agreed, noting that the question whether Sharon's inclusion in the 2021 Will was *the result of undue influence* is "a separate issue."

[¶23.]         The record also reflects that counsel for the Estate did not assert to the circuit court that its motion for summary judgment challenged more than the fourth element of an undue influence claim.  In fact, the Estate likewise attempted to clarify the issue before the circuit court.  Counsel first stated that the court had "read [Dallas's] deposition correctly" that Dallas "was challenging everything[,]" including that "[h]is brother wasn't mentally competent" and the will was unduly influenced.  But then counsel reiterated its argument that summary judgment is proper because as it relates to element four of the Contestants' undue influence claim, "there are no facts they've asserted that . . . [the] farmland would have went to them[,]" and thus, they "can't meet the causation element[.]"

[¶24.]         Notably, it was the Estate, not the Contestants, that submitted Dallas's deposition testimony to the circuit court.  Yet in doing so, the Estate did not argue that Dallas's deposition testimony warranted a determination that the Contestants would be unable to prove that Sharon participated in the drafting of the 2021 Will or engaged in acts of undue influence.  Rather, the Estate relied on the deposition to support its claims that Dennis and Ronald did not have a good relationship for over a year because Ronald had been dishonest regarding a farming matter and that there were hard feelings between Dallas and Dennis resulting from Dennis getting the family homestead.

[¶25.]        Based on the parties' submissions and arguments, the Contestants were not on notice that they needed to submit evidence to show a material issue of fact in dispute on the other elements of their undue influence claim.  However, the Contestants must also show they were prejudiced.  As we explained in *Leonhardt*, "even if the parties did not receive adequate notice of the issue the court relied upon in granting summary judgment, the court's ruling may be affirmed if 'the facts before the . . . court were fully developed so that the moving party suffered no procedural prejudice.'"  *Id.* ¶ 14, 822 N.W.2d at 718 (quoting *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000)).

[¶26.]        The Contestants argue that they were prejudiced by the circuit court's sua sponte determination that they failed to identify disputed material issues of fact supporting that Sharon participated in the drafting of the 2021 Will or that she engaged in acts constituting undue influence because the facts relating to these elements were not fully developed.  They note that the summary judgment hearing was held when the parties were in the very early stages of discovery and that Dallas's deposition had been the only one taken.  They further note that while Dallas did not testify to direct evidence of Sharon's wrongdoing, he did identify the names of persons who would be aware of such information.

[¶27.]        Because the court's decision was based on a record that was not fully developed, and because the other elements of the undue influence claim had not been raised by either party in the respective summary judgment motions, the Contestants were prejudiced when they were deprived of the ability to bring

-12-

forward evidence that would be relevant to these other issues. We thus conclude that the circuit court's error is not harmless. *See Id.* ¶ 14, 822 N.W.2d at 718.

### *Whether the circuit court erred by granting the Estate's motion for summary judgment.*

[¶28.] Although the circuit court decided the summary judgment motions on grounds not briefed or argued by the parties, the court also concluded, under *Tank*, that the Contestants would be unable to establish the fourth element of their undue influence claim. In so ruling, the court stated that the "decedent disinherited all of the contestants from the farmland that is the main subject of this legal dispute" and the Contestants did not present evidence that Dennis had a testamentary disposition toward them.

[¶29.] On appeal, the Contestants claim the circuit court erred for the same reasons they argued below: *Tank* is inapposite; Dennis did not disinherit them; and the language of Dennis's Wills shows he had a testamentary disposition toward them. In response, the Estate argues that the Contestants, just like three of the children in *Tank*, cannot prove that the 2021 Will was the result of undue influence because, in the Estate's view, Dennis disinherited them from the farmland in the 2002 Will by virtue of devising the land solely to John. The Estate further argues that the Contestants' status as heirs-at-law and the fact that they stood to inherit the residuary estate does not evince that Dennis had any testamentary disposition toward them to receive *the farmland*. The Estate thus asserts that, under *Tank*, "there is no causation" as it relates to the 2021 Will because Dennis "had already disinherited them" in the 2002 Will.

[¶30.]    In *Tank*, the decedent, Russell, prepared three wills during his lifetime. 2020 S.D. 2, ¶ 9, 938 N.W.2d at 453. In each of his wills, he expressly disinherited three of his four children. On appeal, this Court determined that the three disinherited children "failed to present any evidence showing 'causation' between any alleged undue influence by Bender and Russell's decision to disinherit each one of them in the 2004 will and, more particularly, in the 2012 will." *Id.* ¶ 47, 938 N.W.2d at 462. The Court noted that there was no dispute Russell disinherited them prior to the time the children alleged that undue influence occurred. The Court also rejected these children's claim that they, as the natural objects of Russell's bounty, could nevertheless prove that Russell's unnatural disposition to Bender in the 2004 and 2012 wills was the result of Bender's undue influence. *Id.* Even though the children were Russell's heirs-at-law, Russell specifically disinherited them, and they presented "no evidence to show that Russell had any testamentary disposition toward them, even in the absence of any alleged undue influence by Bender." *Id.*

[¶31.]    Contrary to the Estate's view, *Tank* does not stand for the proposition that a decedent's decision to devise property to someone other than the party contesting a will necessarily means the decedent *disinherited* the contestant. Rather, the determination in *Tank* that three of the contestants were disinherited was based on the fact that the decedent *expressly* disinherited them in each of his wills. As SDCL 29A-2-101(b) provides, "[a] decedent by will may expressly exclude or limit the right of an individual or class to succeed to property of the decedent passing by intestate succession." There being no language in Dennis's Wills

expressly disinheriting the Contestants, the Estate's reliance on *Tank* in this regard is misplaced.

[¶32.] Further, the Estate either misconstrues or stretches the language in *Tank* too far in arguing that the Contestants' status as Dennis's heirs-at-law is immaterial because they did not present evidence that Dennis wanted the farmland to go to them. The children in *Tank* relied solely on their status as heirs-at-law to argue that even though they were disinherited in the wills, "Russell made an unnatural disposition of his estate" to Bender, which in their view, "may support a finding that the will was clearly a result of undue influence." 2020 S.D. 2, ¶ 47, 938 N.W.2d at 462. Here, in contrast, the Contestants rely on their status as heirs-at-law to refute the Estate's claim that Dennis disinherited them in his Wills, and they are pursuing this undue influence claim as heirs-at-law who could in fact inherit property under the language in the Wills.

[¶33.] In particular, the Contestants note that Dennis did not, in either Will, include a residuary clause and he did not in the 2021 Will include a provision devising his personal property. They then direct this Court to SDCL 29A-2-101(a), which provides that "[a]ny part of a decedent's estate not effectively disposed of by will or otherwise passes by intestate succession to the decedent's heirs as prescribed in this code, except as modified by the decedent's will." They thus note that regardless of their undue influence claim, they will each, along with John, receive a share of Dennis's residue and personal property. They further note that Dennis included language in his 2021 Will expressly providing that if the specifically devised property could not be distributed as designated because the person to

receive the property is not in existence, the property is to be distributed to the heirs-at-law. In their view, they are thus part of Dennis's estate plan. Finally, they assert that "[w]hatever the situation between Dennis and his relatives, it was not so dire that he sought to exclude them. And, if anything, Dennis's 2002 Will demonstrates his clear intent for the farmland to stay in the family" because Sharon, his sister-in-law, would never be an heir under the 2002 Will.

[¶34.] Because Dennis did not expressly disinherit the Contestants and instead executed the 2021 Will under which they would inherit his personal property and potentially his farmland, the scenario in *Tank* is different than the one here. Moreover, the proper inquiry at this juncture is whether there is a material issue of fact in dispute as to whether the devises to Sharon in the 2021 Will show the effect of her undue influence. In light of the undisputed facts that Dennis did not devise any property to Sharon in the 2002 Will, that he changed his Will shortly before his death, and that he specifically bequeathed half of his farmland to Sharon in the 2021 Will, there are sufficient facts to avoid an adverse summary judgment ruling on the limited question whether the 2021 Will was the result of Sharon's undue influence.

[¶35.] Nevertheless, the Estate argues that even if the Contestants prevail in their challenge to the provisions in the 2021 Will devising property to Sharon, they still "lose" because Dennis never intended the Contestants to receive the farmland.

In particular, the Estate relies on SDCL 29A-2-509(c),[2] SDCL 29A-2-507(d),[3] and the general rule from *In re Estate of Martin* that "will construction favors a finding of testacy over intestacy[,]" 2001 S.D. 123, ¶ 19, 635 N.W.2d 473, 476. The Estate then argues that even if the devises in the 2021 Will are invalidated, the 2002 Will would control and Dennis's farmland would go to John rather than pass by intestacy to Dennis's heirs-at-law.

[¶36.] The Contestants disagree that the statutes cited by the Estate are applicable under the circumstances or that the 2002 Will would control the disposition of Dennis's estate if the Contestants prevail on their undue influence claim. They contend that because Dennis revoked the 2002 Will, that Will no longer exists and "[t]hat should be the end of the discussion about the 2002 Will's significance." They further assert that SDCL 29A-2-604(a), which provides that "[a] devise, other than a residuary devise, that fails for any reason becomes a part of the residue[,]" would control if the bequests to Sharon were found to be the product of undue influence. Finally, they argue that because Dennis did not include a

---

2.  SDCL 29A-2-509(c) provides: "If a subsequent will that revoked a previous will in whole or in part is thereafter revoked by another, later, will, the previous will or its revoked part is revived only to the extent that it appears from the terms of the later will that the testator intended the previous will to take effect."

3.  SDCL 29A-2-507(d) provides: "The testator is presumed to have intended a subsequent will to supplement rather than replace a previous will if the subsequent will does not make a complete disposition of the testator's estate. If this presumption arises and is not rebutted by clear and convincing evidence, the subsequent will revokes the previous will only to the extent the subsequent will is inconsistent with the previous will; each will is fully operative on the testator's death to the extent they are not inconsistent."

residuary clause in the 2021 Will, under SDCL 29A-2-604(b),[4] the residue would pass via intestacy to them and John as Dennis's heirs-at-law.

[¶37.] While the Contestants presented this argument to the circuit court, they did so in support of their claim that Dennis did not disinherit them and that he demonstrated a testamentary disposition toward them. They were not asking the court to determine how the property should be distributed in the event their undue influence claim was successful. On appeal, the parties' arguments in this regard are now directed at this precise question. But what remedy or relief could be obtained if the undue influence claim is successful need not be answered at this juncture because this appeal concerns only whether the court erred in granting the Estate's motion for summary judgment on the basis that, under *Tank*, the Contestants would be unable to prove that the devises in the 2021 Will to Sharon were the result of undue influence. As to that question, because *Tank* does not support summarily dismissing the Contestants' undue influence claim and because there are material issues of fact in dispute on the Contestants' claim that the 2021 Will was the result of Sharon's undue influence, the circuit court erred in granting the Estate's motion for summary judgment.

### *Whether the circuit court erred by denying the Contestants' partial motion for summary judgment.*

[¶38.] The Contestants argue that they are entitled to partial summary judgment on the question whether they were disinherited because, in their view, "[i]t would be incorrect as a matter of law and fact for the Estate to argue or

---

4. SDCL 29A-2-604(b) provides in relevant part that "[a] residuary devise that fails for any reason passes to the testator's heirs[.]"

insinuate that Dennis 'disinherited' the Contestants from inheriting his real or personal property." It is undisputed that neither the 2002 Will nor the 2021 Will contains language expressly disinheriting the Contestants, and to the extent the circuit court's denial of the Contestants' motion suggested the court determined otherwise, such a determination was erroneous.

[¶39.] Reversed and remanded.

[¶40.] JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.